THE STATE OF OHIO *v.* GENERAL MOTORS CORPORATION.

[Cite as State v. General Motors Corp. (1973),
34 Ohio Misc. 21.]

(No. 37390—Decided January 17, 1973.)

Newton Falls Municipal Court.

*Mr. Nicholas J. Luca,* for plaintiff.
*Messrs. Guarnieri & Secrest, Mr. Paul A. Guarnieri*
and *Mr. Paul L. Binder,* for defendant.

MARSHALL, J.   This cause came on to be heard before
this court, on an agreed statement of facts and exhibits,
and arguments of counsel, this 17th day of January, 1973.

The defendant has been charged with violating R. C.
1531.29, which is titled "Polluting state land or water," as
follows:

"No person shall place or dispose of in any manner,
any garbage, waste, peelings of vegetables or fruits, rub-
bish, ashes, cans, bottles, wire, paper, cartons, boxes, parts
of automobiles, wagons, furniture, glass, oil, or anything
else of an unsightly or unsanitary nature on any state
owned, controlled, or administered land, or in any ditch,
stream, river, lake, pond, or other watercourse, except those
waters which do not combine or effect a junction with natu-
ral surface or underground waters, or upon the bank there-
of where the same is liable to be washed into the water

either by ordinary flow or annual floods. This section does not apply to any substance placed under authority of a permit issued under Section 6111.04 of the Revised Code or exempted by such section from its terms."

The facts of this case are that, on April 7, 1972, a tank truck from PPG Industries, Inc., was delivering several thousand gallons of Elpo Clear Feed to the defendant. Elpo Clear Feed is 30% total solids, 63% water, and 7% water soluble solvent, pentoxone. In delivering Elpo Clear Feed, the tank truck pumps the liquid into storage tanks with a capacity of 10,000 gallons located on the second floor of the assembly plant of the General Motors complex located at Lordstown, Ohio. The storage tanks are equipped with site glass gauges which indicate the amount of liquid in each tank. For some unknown reason, the site glass gauges did not function correctly nor show when the tanks were completely filled.

Unknown to any plant personnel on duty at the time of the transfer operation, 300 to 500 gallons of Elpo Clear Feed flowed through vent pipes of the storage tanks to the roof of the paint mix room, then ran down the roof rainwater gutters and into the storm water-piping system through 1400 feet of underground pipe to a storm water-drainage ditch leading to Mud Creek. It was only upon entry into the open drainage ditch, that the Elpo Clear Feed became visible and for the first time detectable, and in fact was first detected by a plant employee at about 6:30 p. m., some 8 hours after the spillage had occurred. Defendant employed United Construction Company to build a temporary dam at Cedar Lake, which lake was on private property but leased by the defendant, in order to provide a control-treatment site on Mud Creek in the event of accidental spillage in the plant. After 3 days and the expenditure of $15,300 to clear up the spillage, defendant's engineering personnel determined that Mud Creek and Cedar Lake were completely clear.

R. C. 2945.04 provides that a defendant in a criminal action is presumed to be innocent until he is proved guilty of the crime charged, and in case of a reasonable doubt, he

shall be acquitted. This statute provides further that this presumption of innocence places upon the state the burden of proving him guilty beyond a reasonable doubt. This burden of proof never shifts to the defendant, and rests at all times with the state. See *State* v. *Vargo* (1927), 116 Ohio St. 495 and *Green* v. *State* (App. 1932), 11 Ohio Law Abs. 729.

In every criminal case, the state not only has the burden of proving the defendant guilty beyond a reasonable doubt, but also must establish every essential element of the offense charged beyond a reasonable doubt. See *State* v. *Thompson* (1834), Wright 617; *Fuller* v. *State* (1861), 12 Ohio St. 433; as well as many hundreds of other Ohio cases.

The elements of the offense charged against the defendant in this case are that: (1) the company placed something of an unsightly or unsanitary nature, (2) into a ditch or watercourse, (3) whose waters combine or effect a junction with natural surface or underground waters.

The state, in this case, cannot prevail because it has failed to introduce any evidence in the agreed stipulations to prove beyond a reasonable doubt the third element set forth above. The affidavit filed in this case sets forth that "* * * of an unsightly nature into a water course, to wit: Mud Creek, a tributary of the Mahoning River." The stipulation of the facts, on page 4, last paragraph, indicates that the spillage from defendant's plant got into Cedar Lake, which was a private lake leased by defendant for the express purpose as a control and treatment site in the event of accidental spillage at the plant. There is no evidence that this spillage got beyond the control lake.

There is, however, a further reason why the state cannot prevail and the defendant must be found not guilty—*ignorantia facti excusat*. In *Farrell* v. *State* (1877), 32 Ohio St. 456, at page 459, the Supreme Court of Ohio states:

"The excusing principal of this maxim [*ignorantia facti excusat*] applies with great force where the business is recognized as lawful, and a transaction, in its prosecution, only becomes criminal when it is carried on with a purpose to violate the law. To give this maxim practical effect

in a proper case, is but an assertion of natural justice, for the reason that to render an act criminal the intention with which it is done must be so—the will must concur with the act."

Sir William Blackstone, 4 Commentaries 25 by Kerr, 1857, puts it this way:

"* * * *Ignorance* or *mistake* is another defect of the will; when a man, intending to do a lawful act, does that which is unlawful. For here the will and the deed acting separately, there is not that conjunction between them, which is necessary to form a criminal act. But this must be an ignorance or mistake of fact, and not an error in point of law. As if a man intending to kill a thief or housebreaker in his own house, 'under circumstances that would justify that act,' by mistake kills one of his own family, this is no criminal action."

Ignorance or mistake of fact, guarded by an honest purpose, will afford a sufficient excuse for a supposed criminal act. A reading of the facts in this case leaves no doubt that the maxim *ignorantia facti excusat* applies. This principle of the law has been followed in Ohio ever since as early as 1836, in the Supreme Court case of *Anderson* v. *State*, 7 Ohio 250 (Part 2). As it is stated in 15 Ohio Jurisprudence 2d 299, par. 35:

"Ignorance of facts may excuse the commission of crime, where such ignorance makes the act itself involuntary. Where one does an act apparently in violation of a criminal statute, he may show that he was ignorant of the fact that would make his acts criminal. This is especially true when an offense is so defined by statute that the act of the offender is not a crime unless some independent fact coexists with it; *ignorance of the existence of such fact, or mistaken belief, in good faith and on reasonable grounds, that it did not exist, should excuse from crime.*" (Emphasis added.)

For the foregoing reasons, the defendant is found not guilty and is discharged.

*Defendant discharged.*